In re METROPOLITAN DAIRY CO.

In re LEVY et al.

(Circuit Court of Appeals, Second Circuit.   June 22, 1915.)

No. 319.

BANKRUPTCY ☞165—PREFERENCES TO CREDITORS—PRESENT LOAN.

Neither Bankr. Act July 1, 1898, c. 541, 30 Stat. 544, nor Stock Corporation Law N. Y. (Consol. Laws, c. 59) § 66, prohibiting transfers giving preferences to creditors when a corporation is insolvent, invalidates, after the bankruptcy of a corporation, a chattel mortgage given by the corporation, while in financial straits, to a director and officer, to secure a loan at that time made by him to the corporation, where the cash was then actually turned over to the corporation by him; and the fact that the execution of the mortgage was delayed a few days after the money was paid to the corporation does not make it a security for a past debt, where its execution was agreed on before the loan was made.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260, 266; Dec. Dig. ☞165.]

Appeal from the District Court of the United States for the Eastern District of New York.

This cause comes here upon appeal from an order of the District Court which awarded a fund of $7,500, in the possession of the trustee, to the estate as against the appellants, and declared that a mortgage dated June 23, 1913, made by the bankrupt to one Isabelle P. Doyle, and thereafter assigned to the appellants, Levy Bros., was invalid and inoperative as security for the indebtedness therein stated as against the general creditors of the Metropolitan Dairy Company.

Henry A. Rubino, of New York City, for appellants Doyle and others.

Mitchell May, of New York City, for appellants Levy Bros.

Samuel C. Duberstein and Herman G. Rabinowitz, both of New York City, for appellee Garvin.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge.   William F. Doyle was an officer, stockholder, and director of the Metropolitan Dairy Company, which was adjudicated a bankrupt February 12, 1914, on a petition filed in January of that year.   In June, 1913, the corporation was in straitened circumstances, needing cash to meet obligations presently due.   Whether at the time it was insolvent, or insolvency was imminent, it is not necessary now to decide.   The special master found, on uncontradicted evidence, that on June 16, 1913, Doyle tried to borrow $7,500 from Levy Bros. for the corporation, stating that the corporation would give a chattel mortgage for it on property which the event shows was worth that sum.   Levy declined to make the loan on such security, but did make a personal loan to Doyle on his note secured by a policy of life insurance, and gave him the money.

This money was loaned by Doyle to the corporation through his wife, who indorsed Levy's check and took the bank's note and the mortgage

to herself. Subsequently Mrs. Doyle assigned note and mortgage to Levy Bros., who make the claim. The wife's intermediation may be discarded, and the transaction be treated as a loan of $7,500 by Doyle of money which was his own, borrowed from his friend (Levy) on his personal security. This loan he made on June 17th, the day after he got the money, to the corporation. The chattel mortgage, a lengthy document with a comprehensive inventory, was executed on June 23d, and filed three days later.

If the mortgage had been given at the same time as the loan was made, there could be no question. It is a wholly novel proposition to us that the officer and director of a corporation, which is losing money, is in financial straits, and facing imminent failure, may not lend it money of his own on its mortgage of its personal property, to secure only the cash turned over, without, by any subterfuge, including any existing indebtedness to him. No authority to such a proposition is cited; certainly neither the Bankrupt Act nor section 66 of the New York Stock Corporation Law supports it. It is not giving a preference to give security on free assets to the extent of new hard cash paid into the treasury by any one.

The cash was paid to the corporation on June 17th, and the mortgage given June 23d. If these were separate transactions, the mortgage would be given to secure an existing debt, and the trustee's contention would have merit. But it is contended that the resolution under which the mortgage was executed (it took some time to make the inventory) was passed June 14th, three days before the loan was made. If this be so, we do not see why there was not a single transaction—why the execution and filing of the mortgage does not, under the resolution, date back to the moment of receiving the loan for which it was given. There is no suggestion of any rights accruing to any one during the interim.

The record as to this vital point in the case is unsatisfactory. Counsel who represented the bankrupt before the special master—he is not the counsel who argued this appeal—was present at the argument and stated that he gave the minute book of the board of directors to the special master. The special master, in response to a call by this court, certifies that no books of the company are in his possession. Whether the trustee has the books of the bankrupt does not appear. The special master, however, sends to us two documents—one purporting to be minutes of board of directors of June 14, 1913, the other purporting to be a consent of stockholders dated June 17, 1913. Both of them purport to authorize this chattel mortgage. He states that they were left with him by counsel for the bankrupts, but were not "offered in evidence." We think it would have tended to a more satisfactory determination of the questions before him if he had called for the production of the minute book. Apparently, for some reason which is not clear, neither the special master nor the District Judge thought that it was a matter of any importance that *before* the money was actually loaned the corporation agreed that in consideration for such loan it would execute the chattel mortgage.

We are averse to disposing of the case finally until all the facts are before us, and therefore reverse the order and remand the cause to the

District Court, with instructions to take such testimony as may be obtainable to determine whether or not, prior to the loan of the money, the corporation agreed to execute the mortgage to Levy Bros., or to Doyle, or to Mrs. Doyle, or to whomever else would loan the $7,500. When it is ascertained whether or not such is the fact, the cause may be disposed of in the District Court in conformity with the views expressed in this opinion.