LAKE VIEW STATE BANK v. JONES et al.

(Circuit Court of Appeals, Seventh Circuit. April 10, 1917.)

No. 2389.

1. BANKRUPTCY ⬤306—ACTIONS BY TRUSTEE—APPEAL—REVIEW.
   Where the findings of the District Court that a bill of sale and a chattel mortgage by a bankrupt operated as a preference, and that the transferee knew of the bankrupt's insolvent condition, and had reasonable cause to believe that it was intended to give a preference, and that their enforcement would give a preference, are based upon inferences drawn from undisputed facts, and the statements of the transferee's officials and representatives, they will not be reversed merely because the answer was verified.

2. BANKRUPTCY ⬤303(3)—ACTIONS BY TRUSTEE—WEIGHT AND SUFFICIENCY OF EVIDENCE.
   In a suit to set aside as a preference a bill of sale given by the bankrupt on November 16th to secure a loan made on the 13th, the evidence fails to show that an agreement was made on the 13th to give a bill of sale to secure the loan so made.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 462.]

3. BANKRUPTCY ⬤165(3)—PREFERENCES—SECURITY FOR PRESENT ADVANCES.
   Security given by a bankrupt within four months before bankruptcy, if otherwise valid, will be enforced to protect a present advancement, even

though the borrower was insolvent, and was known to be so by the party advancing the money.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260.]

4. **CHATTEL MORTGAGES** ⊛⇒6—NATURE OF TRANSACTION—BILL OF SALE AS SECURITY.

A bill of sale of personal·property, given to secure a loan, was in effect a chattel mortgage.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 23–41.]

5. **BANKRUPTCY** ⊛⇒151—TITLE OF PROPERTY.

As against the rights of a chattel mortgagee under an unfiled mortgage, a trustee in bankruptcy stands in the position of an attaching creditor.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 193, 239.]

6. **BANKRUPTCY** ⊛⇒152—TITLE OF TRUSTEE—TIME OF VESTING.

The rights of a trustee in bankruptcy, as against an unfiled mortgage, are determined as of the day the petition in bankruptcy is filed.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 194.]

7. **CHATTEL MORTGAGES** ⊛⇒156—FAILURE TO FILE—TAKING POSSESSION.

St. Wis. 1915, § 2313, provides that no chattel mortgage shall be valid, except against the parties, unless the possession of the mortgaged property be delivered to, and retained by, the mortgagee, or unless the mortgage or a copy be filed. *Held*, that where a bill of sale was given to secure a loan, and subsequently a chattel mortgage covering additional property and securing an additional indebtedness was given to confirm the bill of sale, a seizure of the property under the chattel mortgage was not a taking of possession under the bill of sale. so as to make the bill of sale valid, though not filed.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 265, 271.]

8. **BANKRUPTCY** ⊛⇒165(3)—PREFERENCES—SECURITY FOR PRESENT ADVANCES.

On November 16th a bankrupt procured a loan from a bank, and as security executed a bill of sale. The bank immediately ˙sent its representative from Chicago to Wisconsin, where the property was located, to examine conditions and report, and upon his return, anu on learning from an attorney the legal effect of the bill of sale, it sent its attorney to Wisconsin, and on the 20th he obtained a chattel mortgage covering all of the bankrupt's property and securing the loan and other indebtedness; the mortgage reciting that it was for. the purpose of confirming the bill of sale. The chattel mortgage was filed, but the bill of sale was not filed. When the chattel mortgage was given, the bank knew the bankrupt was insolvent, and had reasonable cause to believe that a preference was intended and would result from˹,the mortgage. *Held*, that under Bankr. Act July 1, 1898, c. 541, § 67d, 30 Stat. 564 (Comp. St. 1916, § 9651), providing that liens given or accepted in good faith, and not in contemplation of, or in fraud upon, that act, and for a present consideration, which have been recorded according to law shall, to the extent of such present consideration only, not be affected thereby, the bill of sale and the chattel mortgage, taken together, constituted a valid lien on the property covered by the bill of sale to secure the payment of the loan, as up to the date when the mortgage was given the bank could have filed its bill of sale and perfected the lien thereby created, and the surrender of a valid lien is of itself a present consideration to the extent of the security released.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260.]

Sanborn, District Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

⊛⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit by John M. Jones, as trustee in bankruptcy of William P. Burke and another, copartners as Burke & Hunt, and William P. Burke, individually, against the Lake View State Bank. From a decree in favor of plaintiff, defendant appeals. Reversed, with directions.

From the decree setting aside the bill of sale dated November 16, 1914, executed by William P. Burke, to J. J. Connors, for the benefit of appellant, and setting aside a certain chattel mortgage bearing the date of November 20, 1914, executed by William P. Burke and Eva May Burke to appellant, this appeal is taken.

The copartnership, organized June, 1914, dissolved in December, 1914, was adjudged a bankrupt in December upon a petition filed the 3d of the month. Without capital from the beginning, the company's financial condition grew steadily worse. At its demise, the liabilities were approximately $33,000, and its assets, including disputed accounts, only $16,000. It operated quarries in Wisconsin, and early and continuously and in ever-increasing amounts borrowed money from appellant. Certain of its accounts were from time to time assigned to the bank for security. Early in their dealings there was "talk" of giving security for their loans, but the "talk" never approached the dignity of an agreement.

On November 12th, when bankrupts' indebtedness to the bank was $11,-289.02, a further loan of $7,750 was sought. It was over the appellant's loan of $7,750 thereafter made and the security subsequently taken that the issues involved in this suit arose. After first refusing, and only when bankrupts had vainly sought a loan elsewhere, appellant advanced $4,000 on November 13th, and certain open accounts were then and there assigned as security for this loan. On the 16th, after a hurried trip to Wisconsin, Burke returned for more money and secured $3,750. A bill of sale was given to secure this last loan, covering nearly all of bankrupts' property, and the bank claims it was given pursuant to an agreement made on November 13th when the $4,000 was advanced.

Immediately thereafter appellant sent its representative to Wisconsin to examine conditions and report. Upon the return of this representative, an attorney was consulted, and discovering the legal effect of the bill of sale, and learning also that the property at one quarry had been omitted therefrom, appellant sent its attorney to Wisconsin. He obtained a chattel mortgage covering all the bankrupts' property, and given to secure all of the bankrupts' indebtedness to the bank, and reciting among other things the following: "For the purpose of confirming a certain bill of sale in the nature of a mortgage to J. J. Connors, dated November 16, 1914," etc. The chattel mortgage was promptly and properly filed and directions given to foreclose at once. This bill of sale was never "filed."

Burke, to whom the partnership had transferred its assets and business, having learned that a foreclosure was imminent, left Wisconsin to seek a loan with which to pay this mortgage. While Burke was thus absent, appellant seized bankrupts' property under its chattel mortgage and advertised the sale thereof for December 7th. In the meantime, but after the seizure under the chattel mortgage, proceedings in bankruptcy were instituted and the sale was stayed.

Upon all the evidence the court made findings of fact as follows: "As above indicated, I do not think the proofs sufficient to avoid the assignment of accounts made on November 12th and 13th. I therefore find with respect to these two instruments (speaking of the two in controversy): (1) That the bankrupt gave them as conveyances of his property, while insolvent, and within four months of bankruptcy, and that their giving operated at the time as a preference. (2) That their effect was to enable the defendant to get a larger percentage of its debt than any other creditor of the same class. (3) That the defendant, at the time of receiving such transfers, knew of the insolvent condition of the bankrupt, and that at the same time it had reasonable cause to believe that it was intended thereby to give it a preference, and that their enforcement would give a preference. (4) That the allegations of mat-

ter of fact contained in the complaint essential to avoid the mortgage are proven and true."

Samuel B. King, of Chicago, Ill., for appellant.
Maurice A. McCabe, of Milwaukee, Wis., for appellee.

Before MACK and EVANS, Circuit Judges, and SANBORN, District Judge.

EVANS, Circuit Judge (after stating the facts as above). Appellant first assails the findings of fact made by the learned District Judge. We have carefully examined the evidence, and find it well supports the findings as announced. It would serve no useful purpose to set forth the facts in detail.

[1] The mere fact that the answer was verified does not strengthen appellants' claim in this respect. The findings are based on inferences drawn from undisputed facts and the statements of bank officials and representatives. In the face of such support, findings will not be reversed because the denial in the answer is supported by an oath.

[2] Appellant's further claim that the bill of sale given on the 16th was executed pursuant to an agreement alleged to have been made on the 13th is not supported by the evidence. It may have been appellant's intention to obtain such security, but no agreement was reached on the subject. The witness Burke described the occurrence as follows:

"At the time I got the $4,000, Mr. McCabe told me to come back on Monday. He wanted to make some further arrangements to protect the bank, and in the meantime he would draw up something for me to sign. I do not know just what the conversation was."

Burke further says:

"When I signed this assignment on the 13th, and the note for $4,000, I agreed to be back on Monday, but the time was so short I did not enter into any conversation at all. We were a mile from the depot. I had 20 minutes to get there."

These answers, while somewhat qualified, in response to a leading question put to him, contain a fair statement of the situation so far as it concerns the alleged prior agreement to execute the particular bill of sale as security for the loan made on the 13th. This fact being established, the bill of sale and the chattel mortgage, having been given by the bankrupts while insolvent, and within the prohibited four months period prescribed by the statute, cannot be sustained so far as the $4,-000 loaned November 13th is concerned, in view of the court's further finding that on November 16th the appellant had reasonable cause to believe that the bill of sale would constitute a preference.

[3] But it is claimed that as to the $3,750 advanced November 16th the decree must be reversed. The loan of $3,750 was unquestionably made on the 16th, and the bill of sale was given to secure such advancement. If the security is otherwise valid, it will be enforced to protect a present advancement made as in this case, even though the borrower was insolvent, and was known to be so by the party advancing the money. In re Metropolitan Dairy Co., 224 Fed. 444, 140 C. C. A. 646; In re Clifford (D. C.) 136 Fed. 475.

[4] But it is claimed that the bill of sale, being a mere chattel mortgage, was not valid, because never filed as provided by the laws of Wisconsin, nor was possession of mortgaged property taken thereunder as provided by section 2313, R. S. of Wisconsin.

The bill of sale was in effect a chattel mortgage. First Nat. Bank of Madison v. Damm, 63 Wis. 249, 23 N. W. 497; Manf. Bank v. Rugee, 59 Wis. 221, 18 N. W. 251. That it was subject to the provision of the Wisconsin statute respecting chattel mortgages is conceded.

The Wisconsin statute bearing on the validity of chattel mortgages reads as follows:

Section 2313: "No mortgage of personal property shall be valid against any other person than the parties thereto unless the possession of the mortgaged property be delivered to and retained by the mortgagee or unless the mortgage or a copy thereof be filed as provided in section 2314, except when otherwise directed in these statutes. Nor shall a chattel mortgage of personal property which is by law exempt from seizure and sale upon execution be valid unless the same be signed by the wife of the person making such chattel mortgage, if he be a married man and if his wife at the time be a member of his family, and unless such signature of such wife be witnessed by two witnesses."

[5] As against the rights of a chattel mortgagee under an unfiled chattel mortgage, a trustee in bankruptcy stands in the position of an attaching creditor. In re Pittsburg Big Muddy Coal Co. (C. C. A. 7th Circuit) 215 Fed. 703, 132 C. C. A. 81.

[6] The rights of such trustee are determined as of the day the petition in bankruptcy is filed. Bailey v. Baker Ice Machine Co., 239 U. S. 268, 36 Sup. Ct. 50, 60 L. Ed. 275. Having never been filed, the bill of sale was valueless as to third persons, unless possession of the mortgaged property was "delivered to and retained by the mortgagee." In this case there was obviously no possession of the mortgaged property "delivered to and retained by the mortgagee," unless the possession taken by virtue of the chattel mortgage was such possession.

[7] The seizure under the chattel mortgage cannot be construed as the taking of possession under the bill of sale. The chattel mortgage was an entirely different security. It covered different property. It secured a different indebtedness. The notice of sale following the seizure read:

"By virtue of a chattel mortgage executed by William Burke and Eva May Burke, his wife, to the Lake View State Bank of Chicago, Ill., dated this 20th day of November, 1914," etc.

It thus appeared that the notice described the seizure "by virtue of the chattel mortgage." The date named is the date of the chattel mortgage. The appellant (named as mortgagee in the chattel mortgage) seized the property, whereas it was a stranger to the bill of sale.

The appellant alleges in its complaint that it—

"took possession of all said assets and property in said chattel mortgage described * * * for the purpose of satisfying the lien claimed by it under such chattel mortgage."

Appellant, therefore, cannot rely upon its claim that the seizure was under the bill of sale, or that the bill of sale was a valid lien at the time

the bankruptcy proceedings were begun. The chattel mortgage given November 16th, disconnected from the sale of November 16th, likewise furnishes no basis for a lien in appellant's favor, for it was given for a past indebtedness, and under the finding, standing alone, was clearly a preference.

[8] But the bill of sale and the chattel mortgage taken together may well constitute a valid lien to secure the payment of $3,750. Section 67d of the Bankruptcy Act provides:

"Liens given or accepted in good faith and not in contemplation of or in fraud upon this act, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall, to the extent of such present consideration only, not be affected by this act."

Under the evidence in this case, the bill of sale made on November 16th would have been brought within the provisions of this subdivision of section 67d, had it been filed as required by section 2313 of the Revised Statutes of Wisconsin. Lindley v. Ross, 200 Fed. 733, 119 C. C. A. 177; Remington on Bankruptcy, § 1314. Taking the chattel mortgage on the 20th, "for the purpose of confirming a certain bill of sale in the nature of a mortgage to J. J. Connors, dated November 16, 1914," etc., transferred to the mortgagee the protection afforded by the bill of sale. In re Mahland (D. C.) 184 Fed. 743; Stedman v. Bank of Monroe, 117 Fed. 237, 54 C. C. A. 269.

There may be instances when a chattel mortgage, taken in lieu of a prior unrecorded bill of sale, would not be given the same lien effect as the prior security; but in the case under consideration only four days marked the difference in the dates of the two instruments. No rights were lost or prejudiced during that period. The $3,750 went to pay laborers. The distance between the place where the property was located and Chicago—the place where the business was conducted—made more rapid progress impossible. The bank acted with the utmost diligence after securing the bill of sale. Up to the date when the chattel mortgage was given, the bank could have filed its bill of sale and perfected the lien thereby created, so far as the Wisconsin statute was concerned. In re Antigo Screen Door Co., 123 Fed. 249, 59 C. C. A. 248. A surrender of a valid lien is of itself a present consideration to the extent of the security released. Remington on Bankruptcy (2d Ed.) § 1326.

Again the chattel mortgage, executed and filed on November 20th, in connection with the bill of sale of November 16th, may well be deemed to secure a substantially contemporaneous advance to the extent of $3,750 and as to the property covered by the bill of sale. Dean v. Davis, 242 U. S. 438, 37 Sup. Ct. 130, 61 L. Ed. 419 (decided Jan. 8, 1917, by U. S. Supreme Court); Martin v. Hulen & Co., 149 Fed. 982, 79 C. C. A. 492. The chattel mortgage did not permit the mortgagors to make sales from the mortgaged property for their own use and benefit, and was therefore not fraudulent in fact, as declared in Blakeslee v. Rossman, 43 Wis. 116, Durr v. Wildish, 108 Wis. 401, 84 N. W. 437, and Bank of Kaukauna v. Joannes, 98 Wis. 321, 73 N. W. 997; nor does the evidence outside of the written instrument establish any such agreement or understanding.

It follows, therefore, that the chattel mortgage, upon being promptly filed, became a valid lien for the amount and to the extent that the bill of sale would have been a valid lien, if filed. So far as it includes additional security and attempts to secure an indebtedness in excess of $3,750, it is a preference, properly avoided by the court. The mortgage, however, should not have been entirely set aside. As appellant wrongfully refused to surrender its preference, even in this court, no costs will be allowed in this court.

The decree is reversed, with directions to enter a decree in accordance with the views here expressed. No costs shall be allowed to either party.

SANBORN, District Judge, dissents.